## J. B. ALEXANDER v. THE STATE.

Where a statute uses the term "steal" a simple larceny is intended.

Larceny of a slave contemplates a taking *animo furandi*, or as it is termed at the civil law, *lucri causa*, that is with intent to apply the slave to the taker's use, or to derive some service or benefit to the taker himself or another, from the taking.

Enticing away a slave out of the possession of his owner need not necessarily be with any hope on the part of him who entices him away, of deriving any benefit or advantage to himself or another thereby.

The Act of the 5th of February, 1840, substituted instead of the penalty of death for the larceny of a slave, thirty-nine lashes on the bare back and imprisonment not less than one or more than five years; (Hart. Dig. Art. 2340,) and this penalty was again virtually repealed or superseded by the Act of 13th March, 1848, (Hart. Dig. p. 806,) establishing a State Penitentiary, and the Act of March 20th, 1848, providing for the punishment of all simple grand larceny, not otherwise specially provided for. (Hart. Dig. Art. 2344.)

If the owner, in order to detect the thief, direct a servant to appear to encourage the thief's design, and lead him on till the offence is complete, so long as he did not induce the original intent, but only provided for its discovery, after it was formed, the offence will nevertheless be larceny.

See this case on the construction of statutes in criminal cases.

Where special exceptions are not made to the general charge of the Court, when it is given, it will suffice if it be substantially correct and sufficiently intelligible to enable the jury rightly to apply the law to the facts, and to attain the substantial right and justice of the case, and contain no erroneous ruling or principle, by which the jury can have been misled to the prejudice of the appellant.

Appeal from Harrison. Indictment for larceny of a slave, the goods and chattels of one John Coleman, in the ordinary form, contrary to the form of the statute, &c. The evidence tended to prove that Coleman having discovered the intention of the defendant to steal the slave, interposed no obstacle, and perhaps directed the slave to encourage the theft, and learning from the slave the road the defendant designed to take, intercepted the defendant and the slave as they were pursuing their way, about a half hour after dark, out of the town of Marshall, where the owner resided, in the direction of Jefferson. The instruction to the jury which was asked and refused, is stated in the opinion of the Court, and the instruction given is not important, in the view taken by this Court. The

defendant was convicted and sentenced to hard labor in the penitentiary.

*W. R. Poag* and *P. Morrah,* for appellant.

*Attorney General,* for appellee.

WHEELER, J. It will suffice for the disposition of this case, to notice briefly the principal grounds relied on for a reversal of the judgment as presented by the record, without dwelling to examine and discuss the various views of the questions in the case, which the very elaborate and ingenious argument of counsel for the appellant has presented.

It is objected to the judgment that the indictment, being in the common form for larceny, is not sufficiently descriptive of the facts necessary to constitute the larceny of a slave; and it is insisted, that the Act of the 21st of December, 1836, having defined this offence and its punishment, an indictment cannot be maintained under the statute which prescribes the punishment for the larceny of goods and chattles; but as the punishment prescribed for this particular offence, by the Act of 1836, was repealed by the Act of the 5th of February, 1840, and a different punishment substituted; and as the Legislature has made no special provision for the punishment of this offence, it is dispunishable by law. This is understood to be the scope and purport of the argument. And if it were granted that the change of the punishment prescribed by the Act of 1836, operated a repeal of the enactment, there would be more plausibility in the argument. But even then, it is conceived, this offence must have been held to be included under the general provision for the punishment of larceny, however incongruous the legislation on the subject may appear, or however inconsistent it may be thought to be with the actual intention of the Legislature to prescribe a less punishment for the larceny of a negro than for that of a sheep or a goat. For it is to the positive enactment that we are to

look for the legislative intention and the true interpretation of the law, rather than to any extrinsic considerations which may be supposed to have operated on the minds of the legislators. But the mere change of the punishment did not operate an abolition of the crime as defined by the Act of 1836. And let us see if the indictment be not sufficient in its description of the crime there defined; which is the deprivation of the owner of the possession of his slave; the crime and punishment of which are thus defined and prescribed: "Every per- "son who shall steal, or entice away any slave, out of or from "the possession of the owner or owners of such slave, shall "be deemed guilty of felony, and on conviction thereof shall "suffer death." (Hart. Dig. Art. 2333.) It is evident that this enactment comprehends in its definition and punishment more crimes than one, for it may be one thing to "steal" a slave, and a very different thing to "entice away" a slave out of the possession of his owner. The word "steal" implies a simple larceny, and it is a necessary constituent of this crime that the taking should be with a felonious intent; that is, the possession must be acquired *animo furandi*, or as the civil law expresses it *lucri causa*. The accused must have intended to apply the thing stolen to his own use, or at least to derive some service, or benefit to himself or another from the taking. (4 Bl. Com. 232 and notes; 2 Stark. Ev. 606.) Whereas the crime of enticing away a slave out of the possession of his owner, need not necessarily be with any such intention; for it may be to deprive the owner of him by inducing him to escape to a free State, or elsewhere whereby the owner will be deprived of the service of his slave, without any hope or expectation on the part of him who entices him away of deriving any benefit or advantage to himself. And this will not be larceny, but a distinct and different crime. If this had been the crime for which appellant was indicted, it must have been described by the words employed in the statute as descriptive of the crime, or by some other equivalent words. Or, if it appeared from the evidence that this

was the crime really committed, then, perhaps it might be successfully urged that it was not rightly described in the indictment, and that judgment of condemnation could not be pronounced upon it. But the indictment was not for enticing away, but for stealing the negro ; that is, it was for a simple larceny, which is expressed in the statute by the word " steal" and it contained a sufficient description of that crime. And the evidence shows beyond a question that that, and none other, was the crime committed by the appellant. There is, therefore, nothing in the objection that the statute does not prohibit, or the indictment does not sufficiently describe this particular crime of negro-stealing.

It remains to inquire whether the law affixes any punishment to the crime ; and whether that punishment is confinement at hard labor in the penitentiary. The punishment, as we have seen, formerly was death. But by the Act of the 5th of February, 1840, that penalty was taken away ; and the punishment substituted in its place of " thirty-nine lashes on the bare back and imprisonment " not less than one nor more than five years. (Hart. Dig. Art. 2340.) And this penalty was again virtually repealed, or superceded by the Act of the 14th of March, 1848, Hart. Dig. p. 806, establishing a State penitentiary and substituting confinement therein with labor, for the odious, degrading and cruel punishment of stripes and branding with imprisonment in a county jail; and by the Act of the 20th of March thereafter, providing the punishment of all simple grand larceny not otherwise specially provided for— which the present undoubtedly is—by confinement with labor in the penitentiary, not less than one, nor more than five years. (Hart. Dig. Art. 2344.) Under this provision the punishment was properly imposed in this case.

It is further objected that the Court erred in refusing to instruct the jury, in substance, that if the owner of the slave gave him his consent to go into the possession of the prisoner, and he did so with the knowledge and consent and by the direction of the owner ; and if when the prisoner was arrested,

the negro " was impressed and influenced by and abided un-
" der the controlling will of his master, and was not subject to
" that of the defendant, there could be no larceny."

Without attempting to solve the question by what means
the jury were to institute the inquiry into the state and dis-
position of mind of the negro, so as to decide by whose " con-
trolling will" he was " impressed and influenced ;" it will
suffice to dispose of this objection, to say, that it is the inten-
tion of the thief, coupled with his acts, and evidenced by them,
which must determine their quality and his criminality, and
not the state of mind or intentions of the slave or his owner. `It
will not be pretended that the owner of the negro intended that
the theft should be consummated ; he intended only to detect
and catch the thief, without affording him the opportunity to
consummate his purpose. And the law, applicable to the
case, is well illustrated by the following example : " If the
" owner, in order to detect a number of men in the act
" of stealing, directs a servant to appear to encourage the
" design, and lead them on until the offence is complete, so
" long as he did not induce the original intent, but only pro-
" vided for its discovery, after it was formed, the criminalty
" of the thieves will not be destroyed." (3 Chit. Cr. L. 925 ;
4 Bl. Com. 230, note.)

The defendant did not except to any part of the general
charge of the Court; or ask instructions to supply its supposed
imperfections in those matters in which he now complains of
its deficiency. It is unnecessary to review the charge or to
determine whether it is justly obnoxious to the criticism in
which counsel, both for the accused and the State, have seen
proper to indulge. It may be, (as it not unfrequently must
be, in the necessary dispatch of business in the District Court,
from the want of access to books, and time and opportunity
for study and reflection,) that the charge of the Court is not
framed with that entire and perfect accuracy and precision of
language, which will render it impervious to the assaults of
criticism. It may be that the Court has failed to give the most

Alexander v. The State.

approved definition of the crime; and, (as may not unfrequently be the case,) that though nothing objectionable in the charge of the Court was seen to except to at the time, upon an after comparison of it with the most approved definitions in the books, it may be found that the charge was not as clear, perspicuous and happy in its structure, nor as full, complete and perfect in its definitions, as it might have been. It will suffice however if it be substantially correct, and sufficiently intelligible to enable the jury rightly to apply the law to the facts, and to attain the substantial right and justice of the case; and in these essential particulars, we think it free from doubt that the present charge has fully met the spirit, intention and object of the law. It embodies no erroneous ruling or principle, by which the jury can have been misled to the prejudice of the appellant.

There is no question presented by the record which is deemed to require notice. We think the verdict fully warranted by the evidence; and the conviction legal and proper. The judgment is therefore affirmed.

Judgment affirmed.