## THOMAS SMITH v. THE STATE.

THEFT—CHARGE OF COURT.—On the trial of B for the theft of a geld-
ing belonging to C, the court charged the jury that, "if C did not
give B authority in person or authorize any one for him to deliver
to B the gelding, and he testifies that he did not give such consent,
this would affirmatively show want of consent, if you believe him:"
*Held* to be an improper comment on the evidence and error.

APPEAL from Collin.   Tried below before the Hon. Silas
Hare.

The facts proven upon the trial of the case in the court
below show that John Christian, the owner of the gelding
charged to have been stolen, entered into an agreement or
combination with other persons to entrap appellant into
stealing his (Christian's) gelding, and for that purpose em-
ployed John Snyder to gain his confidence and betray him
into the hands of the officer.   The evidence shows that
Christian knew all about the arrangements assented to, and
entered into the same.   He testified that he knew when
appellant and Snyder were to come to get his horse.   On
Monday night previous to the taking of the horse, he,
(Christian,) in company with S. F. Cooke, and at the re-
quest of John B. Engleman, the person with whom Chris-
tian was living, went to see John Snyder, and entered into
an agreement with him (Snyder) to see appellant Tuesday
morning, and get him to go in company with Snyder on
Tuesday night to Engleman's for the purpose of taking
Christian's horse, and in that conversation between these
three persons, Cooke, Snyder, and Christian, Christian told
Snyder where he would find his horse, when he (Snyder)
and appellant (Smith) should come for him, and gave Snyder
directions how to proceed, to wit: For him (Snyder) to re-
main outside of the stable, and tell appellant where the horse
was, and let him go in the stable and get him.   Christian
testified there was no time set on Monday night when ap-
pellant and Snyder should come after his horse.   Cooke

and Snyder testified that it was the understanding when they parted that they should come on Tuesday night, if it could be so arranged with appellant; and further, that Christian was present all the time and assented to the entire arrangement. Christian testified that he knew when appellant and Snyder were coming, and knew what they were coming for, and that he had no objection, as he knew appellant could not get away with his horse.

Verdict of guilty, and punishment fixed at confinement in the penitentiary for five years.

*Throckmorton, Brown & Bro.*, for appellant, cited Allen *v.* State, 40 Ala., 333 ; 1 Bishop, sec. 570.

*George Clark, Attorney General*, for the State.

DEVINE, ASSOCIATE JUSTICE.—The appellant and Joseph Pigg were jointly indicted for the theft of a gelding (the property of John Christian) at the October term of the Criminal District Court of McKinney city. The defendant was tried separately and convicted. The case is presented for revision on the exceptions taken by appellant during the trial, and the errors assigned.

It is assigned as error that the court erred in giving charges as shown by bill of exceptions, and in refusing charges, as shown by bill of exceptions, and in overruling motion for a new trial.

The 1st bill of exceptions is to the 2d, 3d, 4th, 5th, and 6th charges. The 2d instruction or charge complained of was a brief statement that if the jury believed the defendant guilty of the theft, as set forth in the indictment, they should find him guilty, and assess his punishment at confinement in the penitentiary not less than five nor more than fifteen years. In this there was no error.

The 3d charge complained of is the following: " The intent to steal is the gist of this offense, and if it appears in evidence that this defendant took this gelding in the

manner charged, knowing at the time that the horse was not his property, and having no knowledge that the owner of such gelding had consented to such taking, the crime would be complete, provided the owner of such gelding had not, in fact, given his consent that defendant might take such gelding." This instruction stated in effect the law on this subject, (see Bishop on Criminal Law, 574; Alexander *v*. The State, 12 Tex., 544.) The charge might have been clearer on this subject. The true criterion of the guilt or innocence of the accused is clearly expressed by Justice Wheeler in Alexander *v*. The State, 12 Tex., 544.

The 5th instruction to the jury is open to the objections raised by appellant. The objectionable portion of this charge is the following: "On the other hand, if Christian did not give this defendant authority in person, or authorize any one for him to deliver this defendant the gelding, and he testifies that he did not give such consent, this would affirmatively show want of consent, if you believe him." This portion of the charge was error. It stated to the jury a portion of the evidence for the State, and informed them that Christian's statement affirmatively shows that he, Christian, did not give his consent that defendant should steal his horse. The fact that the judge coupled his comment on the evidence and his emphatic declaration (that Christian's denial of his giving his consent would affirmatively show want of consent) with the expression, "if you believe him," does not relieve the charge of its illegal character. All evidence is valueless, unless it is believed to be true. The objection to the commenting on the evidence by the presiding judge, and the principal reason for the prohibition in article 594, Code of Criminal Procedure, that "he shall not express any opinion on the weight of evidence, nor shall he sum up the testimony," is that it would take from the jury that which is their exclusive right and duty, to decide on the facts and determine for themselves the weight of evidence or the degree of credit

to be given to all or either of the facts in evidence. They are the exclusive judges of the facts in every criminal case. (Code Criminal Procedure, 593.) This portion of the charge had reference to what appears to have been the chief ground of defense set up by the accused. The belief in the truthfulness of Christian's statements relative to his consent not being given in any manner, either expressed or implied, was made by the court to negative any conclusion or reasonable inference which the jury might have drawn from the evidence of F. S. Cook or Snyder, the last named having acted as a decoy to entrap defendant.

F. S. Cook, whose horse was placed in the stable with Christian's, testified that himself, Christian, and another, agreed "that witness and Christian should go that night to see Snyder, and get him to see the boys, and get them to come the next night * * and get the horses. Witness and Christian went to see Snyder on Monday night, told him to go to see the defendant and Pigg the next morning, and get them to come with him (Snyder) to John B. Engleman's on that * night and get witness's and Christian's horses" * * *; that "John Christian knew all about the arrangement entered into, and consented to it; was present with witness and Snyder on Monday night, and agreed with them that the boys should come on Tuesday with Snyder to get his horse; witness and Christian told Snyder where these horses would be; Christian told Snyder to go and tell the boys to come on Tuesday night to steal his horse; Christian and witness did not consent that Smith or Pigg should have their horses; they only agreed that Snyder might get in with them and accompany them, in order that they might be caught."

The evidence of the witness, Snyder, was that he was engaged by some of the citizens to find out what these boys were doing; that he had an interview with one of them at the church on Saturday night, where he informed Pigg that he had been running estrays, and wanted a partner.

Pigg was, so he stated, in the same business; met both the accused next night at church, and again sought and found them on Tuesday plowing, and told them when all three should go, and where they should go to find the horses. These and other facts in evidence were matters for the consideration of the jury in determining whether or not Christian's consent had been given, or that such a state of facts existed as would in reason raise a presumption that his consent had been given, even though the owner neither intended to lose his horse nor let the accused escape, nor that his horse should be removed further than outside of the stable door.

Christian might have truthfully sworn that he did not give his consent, meaning that the accused should not get away with his horse nor escape arrest; and the jury might have believed that in his evidence he truthfully expressed what his views or sentiments were before his horse was taken from the stable; and yet the other facts in evidence might have satisfied the jury that his consent had been given, notwithstanding Christian's mental reservations. The charge of the court, however, ignored all the other evidence, and made the conviction or acquittal turn upon the jury's believing Christian's statements, which statements, the judge informed them, affirmatively showed a want of consent on his part. There is no error in the sixth instruction given, and the charges asked were in substance given in the general charge; those refused were inapplicable to the case as presented. The statement of facts shows that the word "horse" is the term applied to the animal charged to have been stolen, while the charge in the indictment is theft of a "gelding." This question will not be noticed, as the judgment will be reversed. (See Joseph Pigg *v.* The State, decided at this term.) For the error in the fifth section of the charge to the jury, the judgment is reversed and the cause is remanded.

Reversed and remanded.