THE STATE v. McAFEE, Appellant.

### Division Two, March 7, 1899.

1. **Appeals**: RECORD: DIRECTION IN BILL TO COPY MOTION INTO RECORD. Revised Statutes 1889, section 2304, providing that it shall not be necessary for the review of an action to copy the motion for new trial or in arrest of judgment into the bill of exceptions, if it contains a direction to so copy them, does not apply to a motion to set aside an order setting a cause for trial.

2. ———: FINDING OF FACT BY TRIAL COURT. Where the evidence whether counsel appearing for the State had, prior thereto, been retained by accused, is conflicting, it will be presumed that the refusal of the trial court to prohibit him from appearing for the State was correct.

3. ———: COMPETENCY OF WITNESS: NO EXCEPTION. A ruling on the competency of a witness, to which no exception was saved, will not be reviewed.

4. **Homicide**: EVIDENCE: CONSENT TO BEING ROBBED. Being informed that an attempt to rob him on his way home on a certain night would be made, deceased armed himself, and, accompanied by two others, started to go home on the night in question, and, when confronted and fired at by accused, returned the fire, whereupon accused shot and killed him. *Held*, not to show that deceased consented to be robbed.

5. **Witness as Accomplice**: MATTER FOR JURY. On an issue whether a witness was an accomplice to a homicide committed in attempted robbery, accused testified that the witness had got him to go to the place in question to meet a couple of girls. The witness testified that accused had asked him to go there to commit the robbery, and seemingly consenting, he went there unarmed, having first informed the police. *Held*, that it was necessary to submit the issue whether the witness was an accomplice.

6. **Motion to Strike Out Testimony.** It is not error to refuse to strike out incompetent testimony admitted without objection.

7. **State Not Compelled to Introduce Witness.** The State is not required to place any given person on the witness stand.

State v. McAfee.

8. **Homicide**: ATTEMPTED ROBBERY: DECEASED'S BORROWING A GUN In a prosecution for murder in attempted robbery, there being no issue as to self-defense, evidence that a few moments before the homicide deceased attempted to borrow a larger pistol than one he had is immaterial.

9. ———: EVIDENCE: GARMENT WORN BY DECEASED. The garment worn by deceased need not be produced to show the marks made by the shot, but testimony as to its appearance is admissible, it not being secondary evidence.

10. ———: APPEAL: INCOMPLETE CHARGE: NO EXCEPTION. The fact that the charge is incomplete is no ground for a reversal where accused did not except on that ground.

11. ———: ———: MISCONDUCT OF COUNSEL FOR STATE: WHEN REVIEWED. A ruling on alleged misconduct of counsel for the State will not be reviewed where the alleged prejudicial language was merely preserved by affidavits, and not in the bill of exceptions.

*Appeal from Jasper Circuit Court.*—HON. J. D. PERKINS, Judge.

AFFIRMED.

JOHN H. FLANIGAN, T. C. TADLOCK, JAMES B. LOYD and M. R. LIVELY for appellant.

(1) The court abused its discretion in permitting attorney T. B. Haughawout to appear for the State. On this question the wife of Mr. Haughawout was permitted to testify as a witness, over the objection of defendant. This was error. R. S. 1889, sec. 8922. (2) The gist of robbery is the taking (or attempting to take) property from another by force, by putting him in fear, and against his will. No person can commit robbery if he has the consent of the robbed person. R. S. 1889, sec. 3530; Kelley's Crim. Law, sec. 634; 1 Bish. Crim. Law (5 Ed.), sec. 262; 1 Whar. Crim. Law (9 Ed.), sec. 141; Rex v. Railroad, 408; 1 Russell on Crimes, 890; Long v. State, 12 Ga. 293; Terry v. State, 13 Ind. 70; Rex v. McDaniel, Fost. C. L. 121; Rex v. Rearie, 2 Leach, 616. (3) Unless this killing took place in an attempt by defendant to commit the crime of robbery, then under the evidence

it was a killing on sudden impulse, without either delibera-
tion or premeditation and would not be murder in the first
degree, and the court should have instructed for a lesser de-
gree.   R. S. 1889, sec. 4220; 97 Mo. 105.   (4)   The testi-
mony of witness, in which he details the sad scene between
the deceased and his wife, and their singing a song together
was not admissible for any purpose, and it was error on the
part of the court to allow the feelings of the jury to be ex-
cited by it, as it appears that nothing in the nature of a dying
declaration followed it.   This was the one thing which more
than any other influenced the jury, and its admission as a pre-
tended dying declaration was reversible error.   State v.
Johnson, 118 Mo. 491; State v. Wensell, 98 Mo. 137;
State v. Partlow, 90 Mo. 609; State v. Vansant, 80 Mo.
67.   (5)   But in this case the State refused to place
on the witness stand an officer of the law, who was
present, did some shooting, and probably fired the fatal
shot, and then resorted to these death bed scenes and
alleged dying declarations.   This we think was grave error.
(6)   It was error for the court to allow Brewer to describe
the shirt worn by the deceased and the marks made on it by
the shooting.   The shirt itself was the best evidence, and it
should have been introduced and a description of it was not
proper until at least its absence was accounted for.   No evi-
dence is admissible which by its own production presupposes
the existence of better evidence.   26 U. S. 591; Rice Crim.
Ev., p. 42; 81 Ala. 58; 70 Ia. 190; Kelley's Crim. Prac.,
sec. 273; 3 Mo. 507; 103 Mo. 624; 2 Mo. 198; 9 Mo. 688;
32 Mo. 328; 10 Ind. 404; 17 Mo. 964; 36 Mo. 408; 55 Mo.
534.   (7)   The court erred in excluding the testimony
offered by defendant, where it was sought to be shown that
on the evening of the killing, and within a few minutes of
the shooting, the deceased tried to borrow a larger gun or pis-
tol than the one he had.   It was a part of the *res gestae* and
should have gone to the jury.   (8)   In many States, in well

considered cases, the courts have held that it is the duty of the State to place all the witnesses on the stand, and give the defendant the right to cross-examine them.	Rice Crim. Ev., p. 124; 10 Mich. 277; 81 Am. Dec. 787; 30 Mich. 20; 8 Colo. 563; Roscoe Crim. Ev. 164.	(9)	The language of Mr. Lowrance, of counsel for the State, in his argument to the jury, was improper and the failure of the court to reprimand him in the presence of the jury was, we think, reversible error.	66 Mo. 165; 95 Mo. 623; 99 Mo. 683; 106 Mo. 65; 111 Mo. 248; 131 Mo. 328.

EDWARD C. CROW, Attorney-General, and SAM B. JEFFRIES, Assistant Attorney-General, for the State.

(1)	The evidence shows that Haughawout had not been employed by the defendant, or any one for him, to either defend or assist in his defense.	While it is true the defendant makes such a charge and introduces some evidence in that respect, yet there is abundant evidence that no such contract or agreement was ever entered into between the parties such as would deprive Haughawout from assisting the State, or such as would constitute the confidential relationship of attorney and client to such an extent as would prejudice the interests of the defendant in the event he was so permitted to act and assist in the prosecution.	(2)	It would not be contended by the defendant that the deceased could not in law consent to the taking of his own life, and with this unquestionable truth we are warranted in the statement that the defendant can not justify himself in the commission of the crime on the ground that the deceased consented to being robbed on the night in question by the defendant. State v. Covington, 2 Bail. 569; State v. Alexander, 12 Tex. 540; People v. Donmoran, 25 Mich. 356; Richey v. State, 58 Ind. 355; Com. v. Stratton, 114 Mass. 303.	(3)	The witness, Shoemaker, was not an accomplice in the crime committed.	The evidence shows that the defendant made the

request of him to assist him in robbing the deceased and
while he at first resisted the solicitation, he finally consented,
but not until he had made up his mind to expose the
defendant and secure his arrest and conviction, if pos-
sible.    (4)    The evidence showing the dying declaration
of the deceased was admissible.    After several witnesses
had testified as to the condition of the deceased, his
knowledge and belief of immediate and impending
death, his wife was permitted to testify that while he was in
this condition and immediately after he had told her that he
was going to die and must leave her, he said that he was shot
by the defendant, James McAfee.    This testimony discloses
the fact that at the time the statement was made that the
deceased was shot by the defendant he was, first, conscious;
second, he had abandoned all hope of living and was under
the impression of immediate dissolution.    State v. Elkins,
101 Mo. 350; State v. Chambers, 57 Mo. 408; State v. Mc-
Cannon, 51 Mo. 160; State v. Draper, 65 Mo. 335. (5) The
evidence disclosed the fact that at the time of Brewer's
statement relative to the description of the shirt worn by the
deceased the shirt was not in their possession, although the
charge was made at the time by the defendant that it was
seen in the possession of Brewer on that day.    This was de-
nied and is sufficient to account for its absence.    Besides
it was far better, so far as the defendant is concerned, to have
permitted the witness to testify to the description than for
the State to have been required to produce it and created a
dramatic display of the clothing of the dead man before the
jury.

SHERWOOD, J.—This record contains the evidence
of a murder which occurred in the city of Joplin on Satur-
day, the thirty-first day of July, 1897.    The circumstances
attendant on the perpetration of the crime were substantially
these:    William Ebin Brewer, the person murdered, was
about twenty-four years of age, married, and lived between

Twelfth and Thirteenth streets on Virginia avenue, and conducted a grocery business about one block due west of his dwelling house.

It was his custom on leaving the store to pass around the side of the storeroom through an alley and into the yard at the back gate in the rear of his house.

This alley ran north and south and the rear of the store lot opened into the alley by a turnstile. On the twenty-sixth of July in the year mentioned, one Ben Shoemaker was approached by defendant on the subject of robbing generally. Shoemaker declined at first but finally told defendant he would see him further and went away. On Friday evening, the thirtieth of the same month, defendant approached Shoemaker on the subject of robbing Brewer on the next evening which was Saturday. Shoemaker seemingly consented, but meanwhile notified the police force of Joplin, and in this way Brewer was informed of the matter, and made his preparations accordingly. About ten minutes after eleven o'clock on that Saturday evening, Brewer with his revolver in a paper sack left the store, with Shulver his father-in-law, and walked forth toward the turnstile, Shulver having a sack in which were some washers which he intended to give to the expected robber and a box of pepper also of which he likewise intended making a similar donation. With Brewer and Shulver as they left the store Jeffries went also. Shulver was a little in advance, Brewer next, and Jeffries last of all. Jeffries stopped as they passed the corner of the store and stepped in behind the end of the store, and walked on probably fifteen feet further, and this point was perhaps a little over half way to the alley where the turnstile was. The others kept on. When they nearly reached the turnstile defendant who had been crouching down beside the fence (along with Shoemaker who was unarmed) arose, and presenting a pistol towards Shulver and Brewer said something which Jeffries did not understand and then fired a shot (which

as afterwards ascertained) struck the rim of Shulver's hat, then Brewer, stepping to the front of Shulver, returned the fire and then defendant fired directly at Brewer, and this, it appears, was the fatal shot that killed the latter.

Jeffries states that the end of defendant's pistol was not more than about a foot and a half away from Brewer when defendant fired, and that the flash of the powder went into Brewer's clothes and that the pistol was pointed at his breast, Shulver and Shoemaker both testifying that when defendant arose from behind the fence he presented the pistol and said "I want what you got," or words to that effect, and then began firing. Shulver and Shoemaker both unite in stating that defendant fired the shot which resulted in Brewer's death, and Brewer in his dying declarations also stated that defendant gave him his death wound. He said to his brother, "McAfee killed me," and being asked if he was sure of it, said: "Yes, I can see his face now, I have got his face on my memory."

Brewer, staggering under his mortal hurt, managed to get through the turnstile and reached his home. Shulver, acting as some one predicted he would, threw the pepper, but got it in his own eyes, and came very near being shot by Frank English, a policeman, who was stationed on towards the south of the alley, and on the watch for defendant. Frank English springing up at the first pistol shot sprang past Brewer as the latter went staggering home, and shot at a man who had a pistol in his hand and who ran northward up the alley; others also shot at the same fleeing figure. After firing the two shots defendant fled for it, towards the north end of the alley, pursued by several and was not captured till the next day. His pistol was afterwards found in a clump of bushes where he had apparently thrown it, and in the course he was seen going as he fled the night before. Two of the chambers of his revolver were discharged.

Defendant denied having fired any shots on that night

or of having any pistol, and said that he had been persuaded to go to the place where he was seated, by Shoemaker, ostensibly in order to meet a couple of girls, etc., but could give no satisfactory account of why he should sell his pony and redeem his "gun" late Saturday evening, if only intending to meet some girls, besides he states he was shot once in the leg and once in the shoulder.

Brewer managed to reach his home where he expired on Thursday the fifth day of August next after the shooting. This statement is a summary of six hundred and sixty-seven large type-written pages of what is called evidence, but which for the most part is simply gabble, gabble, gabble; thus furnishing a fine illustration of what a curse the art of the stenographer is to the appellate courts. Under the old regime this record, all told, would have contained no more than fifty or sixty odd pages written in long hand.

The evidence being stated, discussion will be had of the various features occurring at the trial and preliminary thereto.

1. And first as to the motion to set aside the order which at the March term, 1898, set the cause down for the twenty-fifth day of April of that term, the cause having been continued to the March term by general order from the preceding September term. The motion for the purpose mentioned has not been preserved in the bill of exceptions. Merely directing the clerk in a bill of exceptions to copy such a motion does not preserve it. Section 2304, Revised Statutes 1889, only applies to motions for new trial and in arrest. [State v. Griffin, 98 Mo. 672.] Without preservation of the motion the action of the court could not be looked into.

2. Evidence was introduced to show that Haughawout had been employed by defendant prior to his appearing on behalf of the State; but as evidence was introduced of a contrary effect, and as the court overruled the motion to prohibit

Haughawout from appearing for the State, it will be presumed its action was correct.

3. It is unnecessary to notice the point whether Mrs. Haughawout was a competent witness in respect to her husband having been employed by defendant, since no exception was saved to the ruling of the court permitting the witness to testify.

4. Brewer did not consent to be robbed; there is no evidence tending to establish that he did. The fact that Brewer knew that defendant was going to attempt to rob him as he went towards home, has no element of consent in it. [1 Bishop New Crim. Law, sec. 262.]

Indeed the resistance offered by Brewer and his refusal to put aside his pistol before leaving the store shows with manifest clearness that consenting was an idea that had not entered his mind. Besides, Brewer did not induce the formation of the intent of defendant to rob him; he did not procure his property to be taken, and his merely placing it in the power of defendant to execute his own original purpose of robbing him, did not render the attempted robbery any the less *invito domino*. [State v. Covington, 2 Bail. 569; Alexander v. State, 12 Tex. 540.]

That defendant intended to rob Brewer is abundantly established; defendant's denial of such intention was a matter for the jury.

5. There is nothing in this case which shows that Shoemaker was an accomplice in the robbery. According to Shoemaker's own testimony he was not, and according to defendant's own testimony they went to the place appointed for an entirely different purpose than robbery. So that no cautionary instruction was necessary as to Shoemaker, and the case of State v. Chyo Chiagk, 92 Mo. 395, is not applicable.

6. There was, as above shown, abundant and positive testimony that defendant did the murderous deed of which

he stands convicted. In addition to that, Brewer's statements to his brother and his wife in the nature of dying declarations were clearly admissible, and we are not inclined to reverse the judgment because of the admission of Shulver's testimony on the subject. It seems, also, that Shulver was speaking of a different day from that spoken of by either Brewer's wife or his brother. Besides, defendant's counsel did not object to Shulver's testimony at the time it was being introduced, but afterwards moved to strike it out, thus bringing this case within the rule announced in State v. Marcks, 140 Mo. 656.

7. It has been the uniform ruling of this court that the State is under no obligation to place any given person on the witness stand, and consequently the motion of defendant to compel the State to call and examine English as a witness was properly denied.

8. There was no error in refusing to admit evidence that Brewer on the evening of the tragedy and a few moments before it, tried to borrow a larger pistol. Such evidence had no bearing whatever on the issue joined.

9. It was not necessary to introduce the shirt in evidence in order to show what marks were on it made by the shooting. This was no more necessary than it was to introduce the dead body of Brewer in order to show what wounds were on it and the appearance of those wounds. The doctrine of primary and secondary evidence does not extend to such subjects.

10. The instructions given by the court of its own motion fully covered each feature of the case and left nothing to be desired. But if such fullness of instructions had not occurred still defendant could not have had ground of complaint, because he did not except at the time the instructions were given that they did not embrace all questions of law, etc. [State v. Albright, 144 Mo. 638; State v. Paxton, 126 Mo. 500; State v. Williams, 136 Mo. 293; State v .Cantlin, 118 Mo. 100, and other cases.]

11.   The language of Mr. Lowrance of counsel for the State was not preserved in the bill of exceptions and the affidavit of the attorneys of defendant as to the language used, has no such preservative power, as this court has so often decided.   [State v. Hayes, 81 Mo. 574, and many subsequent cases.]

Finding no substantial error in the record the judgment will be affirmed and the sentence pronounced by the law will be executed.   All concur.