THE STATE v. VALLE, Appellant.

Division Two, May 22, 1906.

1. EVIDENCE: Contradicting Witness: Immaterial Matter. When a question asked a witness is merely an attempt to contradict the witness on an immaterial matter having no bearing on any issue in the case, an objection to the question is properly sustained.

2. BURGLARY: Aiding and Assisting: Alibi: Instruction: Evidence. Where defendant testifies that he was not present at the time and place of the burglary, he is not entitled to an instruction to the effect that although the jury might believe he

was present at the time, yet they could not convict him unless they further found that he was aiding and abetting some other person in the commission of the burglary. And in this case the point presented in the instruction requested by defendant had already been covered in an instruction given by the court.

3. **REMARKS OF ATTORNEYS: No Exception: Affidavits.** Alleged improper remarks of attorneys can not be preserved by affidavits, but only by bill of exceptions.

Appeal from St. Francois Circuit Court.—*Hon. Robert A. Anthony,* Judge.

AFFIRMED.

*Herbert S. Hadley,* Attorney-Genral, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1)   Defendant's refused instruction was properly refused, as it was contrary to defendant's theory of the case. State v. Bailey, 190 Mo. 295; State v. Kloss, 117 Mo. 591; State v. Lewis, 118 Mo. 83; State v. Gartrell, 171 Mo. 522; State v. Meadows, 156 N. Y. 110. (2) Improper remarks of an attorney cannot be preserved by affidavits. State v. McAfee, 148 Mo. 370; State v. Grant, 144 Mo. 66; State v. Lamb, 141 Mo. 298; State v. Meals, 184 Mo. 260; State v. Welsor, 117 Mo. 583; State v. McCarver, 194 Mo. 717.

BURGESS, P. J.—Defendant and one Clarence Mitchell were jointly indicted by the grand jury of St. Francois county, and charged with burglary in the second degree for breaking into a jewelry store belonging to one James Covington on the 5th day of November, 1903. On August 4, 1904, defendant was put upon trial in the circuit court of said county, found guilty by the jury, and his punishment assessed at three years' imprisonment in the penitentiary. After unavailing motions for new trial and in arrest, defendant appeals.

.   Briefly stated, the facts are as follows:   James W. Covington owned a jewelry store in the town of Flat

River, St. Francois county, in which store there was at the time of the commission of the alleged offense a stock of goods, consisting of jewelry, watches, silverware and other valuable things, kept for sale. The store was burglariously entered on the night of the 5th of November, 1903. At the time of leaving the store that evening, Mr. Covington placed the more valuable goods in the back part of the safe and locked it. He also locked the door opening into the building, and left a lamp burning therein. A brother of Mr. Covington was night watchman in the town at that time, and carried two of the keys to the front door of the store, which was situated at the corner of the main street of said town, and near the railroad tracks. Across the street from Mr. Covington's store was the store of one Jas. L. Darling, the street being sixty to seventy feet wide. The front of Covington's store was mostly of glass, and the door, which had two locks on it, was about two inches in thickness. Between twelve and one o'clock that night Mr. Covington was sent for, and came to the store, the door of which he found open. A crowbar and cold chisel were found lying on the floor, and the door locks broken. The crowbar fitted into a notch in the door, where the door strip had been prized off. Inside the store, near the safe, a monkey wrench, a funnel of paper and a lot of black powder were found. Mr. Covington also found some wedge-shaped pieces of iron, the kind used in brakes on box cars. The handle of the safe had been twisted off, a hole made in the safe and some powder poured inside. A number of footprints were discovered in the cinder walk in front of said store. The night watchman testified that he was in said store a short time before the burglary; that everything seemed to be all right and he left, locking both locks on the front door; that he saw defendant and Clarence Mitchell together in John Higgins' restaurant about nine o'clock that night; that he afterwards saw defendant a little after ten, stand-

ing near the railroad track, about eighty feet from the Covington store. That he next saw defendant about an hour later, standing about the same place, and that defendant seemed to be watching for some one. The night watchman walked down the street in another direction and was gone about twenty minutes. When he returned he saw two men standing in front of and near the jewelry store. As he neared them they stepped apart, as if to let the watchman go in between them; then two other men came from around the corner of the store and drew their pistols. The watchman drew his pistol, and one of the men, Clarence Mitchell, knocked the pistol out of his hand. One of the men struck the watchman in the eye, wounding him seriously, and in the scuffle his pistol was discharged. These four men then took hold of the watchman and took him around the corner of the store, when he broke loose from them. At that time, defendant was standing across the street and seemed to be guarding for the others. As the other men ran they cursed the night watchman, and just then defendant ran, passing within six or seven feet of the watchman and using the same form of profanity. Defendant joined the other men, and they all ran towards the depot and in the direction of shaft 4 of the Doe Run Mining Company. While defendant was standing across the street in front of Darling's store, John Higgins fired a pistol, when he and his associates fled. The officer and Higgins examined the jewelry store and found it in the condition as testified to by Mr. Covington. The moon was shining bright that night, and the officer had no trouble in recognizing Mitchell and defendant. Shortly after the time the burglary was committed, defendant went into the cage room of shaft No. 4 of the Doe Run Mining Company, and hurriedly passed on through. Defendant was also seen at said shaft about seven o'clock that night, in company with Clarence Mitchell. When the officer went to arrest defendant, he was in

the act of saddling a horse; and, before he said a word to him, defendant called out to the officer not to shoot him.

The defendant admitted being in Flat River on the evening of the burglary, admitted eating a lunch in Higgins' restaurant about nine o'clock, in company with Clarence Mitchell. He also admitted being in company with Mitchell at the mines in the early part of the evening; but claimed that he left town prior to the commission of the burglary, went some miles in the country and knew nothing of said crime till long after its commission. Defendant introduced a witness named Ellis Dillion, who testified to contradictory statements made to him by the night watchman, to the effect that he recognized Mitchell, but did not recognize defendant.

In rebuttal, the State proved that Ellis Dillion and Charles Meadows, two of defendant's witnesses, bore a bad reputation for truth and veracity.

No brief has been filed in this case in behalf of the defendant. In the motions for new trial and in arrest there are many complaints of error, but only such as seem to us worthy of consideration will be noticed.

It is asserted in the motion in arrest that the indictment fails to state facts sufficient to constitute any offense. To this we cannot agree. The indictment is drawn under section 1886, Revised Statutes 1899, and conforms strictly thereto. It contains every essential averment to constitute a good indictment under the section. [State v. Tyrrell, 98 Mo. 354; State v. Watson, 141 Mo. 338.]

During the direct examination of Harry Kelley, a witness for the defendant, he testified that at the time of the burglary he was working for John Higgins in his restaurant at Flat River, and that he remembered seeing Orville Covington come into the restaurant. He was then asked by defendant this question: ''Did you go out and get any beer for him?'' The State objected

to the question. The objection was sustained, and rightly so, upon the ground that the question was immaterial, and an attempt to contradict a witness on an immaterial matter having no bearing on any issue in the case. Nor was there error in refusing the instructions asked by defendant. The position of the State, as its evidence tends to show, is that defendant, at the time Clarence Mitchell and others committed the burglary, was standing near the store, and was there aiding and assisting in the commission of the burglary. Defendant testified that he was not present at the time and place of the burglary, but was on his way to his home, near Flat River. He nevertheless asked an instruction to the effect that although the jury might believe he was present at the time of the alleged burglary, yet they could not convict him unless they further found that he was aiding and abetting some other person in the commission of the burglary. There was no error in refusing this instruction, because the same point presented by it is fully covered by instruction numbered one given by the court.

Objection is made in the motion for new trial to remarks made by the prosecuting attorney in his address to the jury, and which are attempted to be preserved by affidavits instead of in a bill of exceptions, which latter, as has often been ruled by this court, is the proper and only method of preserving matters of exception which occur in the presence of the court upon the hearing of a cause, unless the court refuse to sign the bill upon the ground that it is not true. [State v. McAfee, 148 Mo. 370; State v. Grant, 144 Mo. l. c. 66; State v. Lamb, 141 Mo. 298; State v. Meals, 184 Mo. l. c. 260; State v. McCarver, 194 Mo. 717; State v. Welsor, 117 Mo. l. c. 583.]

The instructions covered every feature of the case, are unobjectionable, and very fair to the defendant. There was an abundance of evidence to take the case to the jury. The weight of the evidence was for the

consideration of the jury, and they having found the defendant guilty as charged, we are not inclined to interfere with their verdict.

The judgment is affirmed. All concur.