## THE STATE v. CLEVENGER, Appellant.

### Division Two, May 8, 1900.

1. **Criminal Law:** CHANGE OF VENUE. The granting of a change of venue in a criminal case rests largely in the discretion of the trial court, and the Supreme Court will not interfere unless it is shown that such discretion has been abused.

State v. Clevenger.

2. ——— : ——— : PREJUDICE OF INHABITANTS. Defendant was indicted for murder at the February term of court. The case was continued to the June term, at which a continuance was, on defendant's application, granted to the November term. At that term he filed a motion for a change of venue, alleging that the minds of the inhabitants of the county were so prejudiced against him that he could not have a fair trial. The application was overruled. *Held*, that the change of venue was properly denied, since the application failed to state that the facts, upon which the change was asked, came to the defendant's knowledge after the last preceding continuance.

Appeal from Clay Circuit Court.—*Hon. E. J. Broaddus,* Judge.

AFFIRMED.

*Theo. Emerson* and *Jas. C. Davis* for appellant.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, and *Frank H. Trimble,* for the State.

(1) The granting of a change of venue in a criminal case is a matter within the discretion of the trial court. And the appellate tribunal will not disturb the trial court's ruling thereon unless that discretion has been palpably abused. State v. Dyer, 139 Mo. 199; State v. Tatlow, 136 Mo. 678. (2) The defendant was in custody when indicted. The indictment was returned at the February term, 1899. His application for a change of venue was filed at the November term, 1899, and the application fails to state that the facts on which he grounds his application first came to his knowledge since the last preceding continuance of the cause. Sec. 2579, R. S. 1899; State v. Boone, 70 Mo. 649. (3) Instruction numbered 10, given on behalf of the State, correctly declared the law. State v. Schaefer, 116 Mo. 96; State v. Wright, 134 Mo. 404. (4) No error was committed in giving instruction numbered 11. It declares the settled law of this

State. State v. Hundley, 46 Mo. 414; State v. Riley, 100 Mo. 493.

BURGESS, J.—At the February term, 1899, of the circuit court of Clay county defendant was indicted for murder in the first degree, for having theretofore at said county shot and killed with a pistol one George Allen. The cause was then continued to the following June term of said court. At this term on application of defendant the cause was continued until the November term, 1899, of said court.

On the first day of this term defendant was duly arraigned and pleaded not guilty. He then filed a motion for a change of venue alleging that the minds of the inhabitants of Clay county were so prejudiced against him, that he could not have a fair trial therein. The application was overruled, and defendant put upon trial. He interposed the defense of insanity. The jury found him guilty of murder in the first degree. From the judgment defendant appeals.

It is disclosed by the record that at the time of, and for some months before the homicide, defendant was engaged to be married to one Jennie Clevenger, whose father was his second cousin, and at whose house he made his home, for some time, but finally left there and was living with a near neighbor at the time of the killing. In the meantime, George Allen began paying attention to Jennie Clevenger much to the discomfort and annoyance of defendant, so much so that upon one occasion defendant remarked to her that if she married Allen "they would never have no peace." And upon another occasion in a conversation with one James McAfee with respect to Allen's having a better time with the girls than they did, defendant said, "Yes, if he isn't careful he will get shot in two."

On the evening of the homicide there was preaching in the neighborhood at a school house called the Clevenger School House, to which defendant went that evening, riding upon horseback behind one Charles West, upon the same

horse. When they reached there neither Allen nor Jennie Clevenger was there, and defendant remained but a short time, when he and West again mounted their horse, and rode off, taking the road which led east. They had not gone far until they met Allen and Jennie Clevenger in a buggy driving in a trot toward the school house which defendant had just left.

The defendant and West immediately turned about and followed them back to the school house. When they reached there Jennie Clevenger and Allen went in and took seats near the stove.

The school house sets east and west, and has a door in the west end. The stove was about midway between the north and south sides of the room, and one-third the length of the room from the east end. Jennie Clevenger sat down by her sister Della in one of the seats just north of the stove. Allen took a chair in the aisle a few feet behind and to the right of her.

Between the row of seats in which Jennie Clevenger sat and the north wall of the school house, there was a narrow aisle, and in this aisle, with its back against the wall, was a bench just opposite and facing the end of the seat on which the two Clevenger girls sat.

Allen and Jennie Clevenger had been seated but a few moments when the defendant came in. When he saw where they were seated he walked up the aisle along the north wall of the school house to this bench and sat down. This placed him within arm's reach of Jennie, but put him some distance from Allen, with the two girls, the bench and the width of the aisle between them. It also placed him at their left and a little in front of them where they could see every move that he made. In a few moments he got up and took a seat in the rear or west end of the building, some eight or ten feet behind Allen. Once or twice during the service he got up

and went outside, and then returned to his seat in the west end of the building.

At the close of the sermon, the preacher asked his hearers to rise and receive the benediction. They did so and as Allen arose and stood up, the defendant walked swiftly up the aisle to a point immediately behind him, drew a revolver from his pocket, and, holding it in both hands, placed it at the back of Allen's head and fired. The unfortunate man fell dead. As he fell, Jennie Clevenger caught at him and tried to hold him up, but his weight was too great for her and she was thrown down upon his lifeless body. Immediately upon firing the first shot the defendant levelled his pistol at her head, but she being jerked suddenly to the ground, the ball missed her and struck her sister Della, giving her a wound from the effects of which she died a few months thereafter.

From the school house, the defendant went to a neighbor's house and borrowed a cap and shotgun telling them that he had been held up by two highwaymen. He was arrested the next day and while talking to neighbors and friends who had gathered about him, he said he had intended to kill Allen and Jennie Clevenger, and was sorry he killed Della.

The point is made in the motion for new trial, that the court committed error in overruling defendant's motion for a change of venue, but we are unable to concur in this view, and for these reasons. The granting of a change of venue in a criminal case rests largely in the discretion of the trial court, and this court will not interfere in the absence of a showing that such discretion has been abused. [State v. Tatlow, 136 Mo. 678; State v. Dyer, 139 Mo. 199.] In the next place defendant was in custody, and the motion was not made during the term of court, at which the indictment was found, and does not state that the facts upon which the application was predicated, that is, that the minds of the inhabitants of Clay county, Missouri, were so prejudiced against defendant that he could not have a fair trial in said county, first came to his

State v. Clevenger.

knowledge after the last preceding continuance of the cause as required by sections 2578 and 2579, Revised Statutes 1899, and was therefore insufficient. [State v. Boone, 70 Mo. 649.]

It is asserted in the motion for a new trial that all of the instructions given on the part of the State are erroneous, and especially the tenth and eleventh. It is not however intimated in what respect, and after a careful examination of them we think the objection untenable.

Instruction numbered ten is in accordance with the rulings of this court in the cases of State v. Schaefer, 116 Mo. 96, and State v. Wright, 134 Mo. 404, and free from objection. So, with respect to the State's eleventh instruction; it is in accordance with the rulings of this court in State v. Hundley, 46 Mo. 414, and State v. Riley, 100 Mo. 493.

The court gave sixteen instructions on the part of the State, and twelve upon the part of the defendant, which covered every phase of the case. No instruction asked by the defendant was refused. His only defense was that of insanity, which there was no evidence whatever to support. There was not the slightest excuse or provocation for the crime. Nor did the deceased have any reason to think that defendant intended him harm. It was at a place of worship, and just as the benediction was being given, a time and place when no one not having a depraved and wicked heart would have contemplated such a crime. Defendant had a fair and impartial trial. His crime was a most atrocious one, and he must suffer its consequences.

We therefore affirm the judgment and direct the sentence to be executed. *Gantt, P. J.*, and *Sherwood, J.*, concur.