# THE STATE v. HOWELL MACE, Appellant.

### Division Two, November 24, 1914.

1. **INFORMATION: Felonious Intent.** An information which, after alleging the assault was feloniously made with a shotgun, and that the shooting and striking were done feloniously, states that the assault and shooting were done."with the intent then and there him the said Herod Williams on purpose and of his malice aforethought feloniously to kill and murder," sufficiently charges felonious intent to kill by means of a firearm.

2. ————: **Shotgun: Judicial Knowledge.** The courts judicially notice the dangerous and deadly nature of a shotgun and other like firearms. But that is not true of a rock, club and some other weapons.

3. **JUROR: Challenge.** An attempted challenge of a venireman in his *voir dire* examination, in the words, "The defendant's counsel object to the juror; challenge him for cause," is the same as no challenge at all. A challenge for cause must be specific and point out the ground or reason for the challenge.

4. ————: ————: **Unnecessary Hazard.** But while such an attempted challenge cannot be considered on appeal, it is observed that courts and prosecuting attorneys, without reason, often do the unwise and unnecessary thing of hazarding a prosecution upon the retention of a juror whose competency is uncertain, when it is always possible, usually from bystanders, to secure jurors about whose fairness and impartiality there can be no question.

5. ————: **Prior Opinion: Directed to Crime and Not to Defendant.** An expression by a trial juror indicating he entertained strong prejudice against the crime committed, by whomsoever committed, but not directed towards defendant, does not disqualify him, if upon his *voir dire* he testifies he has formed no opinion of defendant's guilt or innocence and will give him a fair trial. So that where a witness, by affidavit in support of a motion for a new trial, swore that she heard one of the trial jurors say "a fellow like that ought to be sent to the penitentiary," and the juror, in a counter affidavit, swore that he was at the store at the time named, that a message came over the telephone that the prosecuting witness was fatally wounded and his wife was dying, that it was reported that the shooting had been done by defendant's father, that other persons present expressed the opinion that a person

who would commit an act such as was detailed over the tele-
phone should be in the penitentiary, but that he had no recol-
lection of having made any such remark himself and if he
did it was based on the telephone report, and that at no time
or place prior to the trial had he said defendant was guilty,
but that whatever he may have said was to the effect that if
a person was guilty of such an act he should be in the peni-
tentiary, and said juror on his *voir dire* had sworn he had
formed no opinion, and the trial court, after hearing the af-
fidavits, overruled the motion for a new trial, it will not be
*held* that the juror possessed such bias or prejudice as pre-
cluded him from giving defendant a fair trial, there being
doubt as to whether the remark was made at all, and doubt
if made whether it referred to the defendant or pertained
to a general but commendable detestation of crime, and in such
case the rule is that the doubt should be resolved in favor of
the ruling of the trial court.

Appeal from Miller Circuit Court.—*Hon. J. G. Slate,*
Judge.

AFFIRMED.

*Barney Reed* and *Sid C. Roach* for appellant.

(1) The court erred in overruling defendant's
motion for new trial and of defendant's motion to ex-
clude Juror J. S. Lumpkin from the panel. R. S. 1909,
sec. 7283. The evidence given by Juror J. S. Lumpkin
on his *voir dire* examination shows that he had a fixed
opinion as to the guilt or innocence of the defendant
and that his opinion was such as to require evidence
to overcome it and as to influence his judgment, and
if so, he was not a qualified juror. Spangler v. Kite,
47 Mo. App. 233; Theobald v. Transit Co., 191 Mo. 395.
When an opinion is formed on newspaper reports
alone, in order to qualify as a juror in his *voir dire*
examination it should be shown and clearly appear
from the record that such juror would fairly and im-
partially try the case and render a verdict based upon
the evidence produced at the trial alone, notwithstand-
ing such opinion. State v. Rasco, 239 Mo. 535; State

v. Bobbitt, 215 Mo. 10. (2) It is clear that Peach Wall was incompetent to serve as a juror in the trial of this case; he had, previous to the trial, formed and expressed his opinion in a pronounced manner among his neighbors, and in his *voir dire* examination concealed such fact from the defendant. Gibney v. Transit Co., 204 Mo. 704; State v. Foley, 144 Mo. 600. (3) The information in this cause is defective in that it fails to properly charge that the assault was committed by the defendant "with felonious intent," and the defendant's motion in arrest should have been sustained.

*John T. Barker*, Attorney-General, and *S. P. Howell* for the State.

(1) The information contains every essential element necessary to constitute the crime charged, and is drawn in accordance with forms which have repeatedly met with the approval of this court. Sec. 4481, R. S. 1909; Kelley's Crim. L. & Pr., sec. 576, p. 505; State v. Barton, 142 Mo. 453; State v. Johnson, 129 Mo. 26; State v. Bond, 191 Mo. 565; State v. Bartlett, 209 Mo. 404; State v. Foister, 202 Mo. 46; State v. Sovern, 225 Mo. 583. It is unnecessary to aver in the information, when the assault is made by shooting, that it was committed with a deadly weapon. The effect produced, as detailed in the evidence, is sufficient confirmation of the deadly qualities of the instrument employed. State v. Laycock, 141 Mo. 274; State v. Harris, 209 Mo. 434; State v. Keener, 225 Mo. 488. (2) The court did not err in accepting J. S. Lumkin as a juror in this case. This juror stated in his *voir dire* examination that he knew nothing about the case except from newspaper reports which did not pretend to give the details fully. Although he testified that he had formed an opinion, or rather an impression had been made upon his mind from such reading, yet he further stated that if he

were selected as a juror in the case he would be governed by the law and the evidence and the instructions of the court. State v. Cunningham, 100 Mo. 388; State v. Schmidt, 136 Mo. 650; State v. Church, 199 Mo. 631; State v. Bronstine, 147 Mo. 530; State v. Darling, 199 Mo. 196; State v. Vickers, 209 Mo. 12; State v. Bobbitt, 215 Mo. 46; State v. Rasco, 239 Mo. 557.   The juror Peach Wall was qualified and competent to serve as a member of the trial jury in this cause. It seems clear that whatever expression, if any, this juror had made prior to the trial was based on common rumor, and that it was leveled at the nature of the crime committed and not at the guilt or innocence of this particular defendant. Remarks based on common rumor and evidencing the existence of bias or prejudice against the crime committed constitute no sufficient ground for rendering a juror incompetent to serve as such. State v. Core, 70 Mo. 491; State v. Burns, 85 Mo. 47; State v. Gonce, 87 Mo. 629; State v. Sykes, 191 Mo. 76; State v. Reed, 137 Mo. 132; State v. Forsha, 190 Mo. 324; State v. Myers, 198 Mo. 250.

FARIS, J.—Defendant was tried in the circuit court of Miller county upon an information charging him with the violation of section 4481, Revised Statutes 1909, for that he had on purpose and of his malice aforethought shot one Herod Williams, with a certain shotgun. He was convicted and his punishment fixed by the jury at imprisonment in the penitentiary for a term of two years; from the sentence which followed he has duly appealed.

The information upon which the conviction of defendant was had becomes pertinent for the reason that he challenges the sufficiency thereof. The attack upon the information is somewhat general, but in order to illustrate the point we append this information (caption and verification, both of which were in due form, omitted), as follows:

"Walter S. Stillwell, prosecuting attorney within and for the county of Miller, in the State of Missouri, under his oath of office informs the court that one Howell Mace on the 1st day of July, 1913, at the county of Miller, in the State of Missouri, in and upon one Herod Williams, feloniously and on purpose and of his malice aforethought, did make an assault, and did then and there on purpose and of his malice aforethought feloniously shoot him the said Herod Williams, in and upon the head and neck of him, the said Herod Williams, with a cetrain shotgun which he the said Howell Mace then and there had and held in both his hands, with the intent then and there him, the said Herod Williams, on purpose and of his malice aforethought, feloniously to kill and murder, against the peace and dignity of the State."

The facts, in the light of the points urged for reversal, are not particularly pertinent, but in order that some connected idea may be had as to these facts, which to a slight extent illuminate the discussion of the alleged errors, we append them:

The defendant Mace and the prosecuting witness Herod Williams were farmers, residing on adjoining farms, some three miles from the little village of Uhlman in Miller county. The farm occupied by defendant lies north of that occupied by the prosecuting witness and is owned by defendant's father, one John Mace, who resides with him. A narrow lane, which it seems was only a few feet in width, runs between the two farms, which lane is fenced on either side by a single barbed wire. The house occupied by defendant and that occupied by the prosecuting witness were only some quarter of a mile apart and plainly in view from each other. Bad feeling had existed and divers other clashes had occurred between defendant and said Williams during a period of some two years.

On July 1, 1913, the day of the shooting, the prosecuting witness was engaged in plowing a field of corn.

At about the hour of nine o'clock in the morning of that day he hitched his horse to a fence post and went to the house for the purpose of getting a drink of water. After getting this drink the prosecuting witness started back to his plowing and to the point where he had hitched his horse. About the time he got back near the place where he had been plowing he noticed, as he testifies, that a hen and a brood of chickens belonging to him, and which had been following his plow that morning, were over in a stubblefield belonging to the Maces. In order to make them return to his premises he picked up a rock or clod, which he threw at the hen, and thus frightened her and caused her to come back upon the prosecuting witness's side of the lane. Thereupon he turned toward his plowing and was in the act of unhitching the bridle rein of his horse from a post, to which he had tied it, for the purpose of again resuming his work, when he saw defendant running toward him from defendant's house, carrying a gun, using profane and vile epithets and saying, "I will kill you this time." The prosecuting witness tells us that he had not before on that morning seen defendant; that he had had no trouble with him or with any of his family that day and was at first in doubt as to whether the language of defendant was directed toward him. But as defendant continued to approach him, armed with a gun and in a threatening manner and upon his repeating the opprobrious epithet the prosecuting witness · asked defendant to stop and come no further. Upon defendant replying with an oath and continuing to come toward the prosecuting witness the latter started toward his own house, meeting upon the way there his wife, who came toward him carrying a pistol. This pistol, the prosecuting witness testified, he asked his wife to give him, but she refused and the witness after a struggle with her, being unable to secure possession of the pistol, turned and went with her toward the fence where the horse was hitched and toward which

point, as the context shows, the defendant was himself moving. An altercation then ensued between defendant on the one hand and the prosecuting witness and the latter's wife on the other, in the course of which both the defendant and the prosecuting witness called one another liars and in which the defendant, according to the testimony of both Mrs. Williams and the prosecuting witness, applied to Mrs. Williams a very vile epithet. After some further altercation the defendant fired at Williams with the gun which he was carrying, which it seems was a 20-guage single-barreled shot gun loaded with number four shot, striking Williams in the forehead with a number of the pellets. Immediately thereupon the prosecuting witness called to his wife to shoot the defendant. Mrs. Williams began firing the revolver which she was carrying and continued to do so as rapidly as she could pull the trigger till she had fired five shots and emptied the weapon. Defendant then came up closer to Williams and his wife and firing with the gun at Mrs. Williams shot her in the wrist and left breast. The prosecuting witness picked up a rock, which he threw at the defendant while defendant was reloading his gun and then turned, as he says, to assist his wife, who was seriously wounded, in getting back to the house. As he turned his head and back to the defendant the latter again fired and shot the prosecuting witness in the back of the head, causing the latter to fall. From these shots the prosecuting witness was confined to his room for some week or ten days, recovering finally, and apparently fully.

The state of facts above briefly set out are taken largely from the testimony of the prosecuting witness, who is, however, corroborated by his wife. The testimony of the defendant, his wife and his father tends to prove that the defendant acted in self-defense; that he had procured the gun and started toward the scene of the difficulty for the purpose of protecting his fa-

ther, at whom the prosecuting witness was throwing rocks. He further swears, and both his father and his wife corroborate him, that the shooting was begun by Mrs. Williams and that she had twice fired the revolver at him before he fired a shot at either her or the prosecuting witness. We need not concern ourselves with this, however, since this conflict in the evidence has been resolved by the triers of fact against defendant and is no longer a debatable question here.

Upon the trial of the case objection was made to the competency as a juror of one John S. Lumpkin, who was chosen as one of the panel of twenty-four, but was not upon the panel of twelve who actually tried defendant.

Likewise after the trial the competency of one Peach Wall, who was a member of the panel of twelve who actually tried defendant, was attacked in the motion for a new trial and this attack was attempted to be backed up by the affidavit of one Mrs. Janie Thomas. This affidavit becomes pertinent and is as follows, omitting caption, signature and jurat:

"Mrs. Janie Thomas, of lawful age, being first sworn, on her oath says that on or about the —— day of ——, 1913, and within a few days after an alleged assault by one Howell Mace upon Mr. Williams in Miller county, Mo., that at Faith, in Miller county, Mo., she was in the store building of James Wall, where there were a number of people gathered together discussing the case of State of Missouri v. Howell Mace, charged with assault on said Williams and his wife, that one Peach Wall was also present, and in discussing said case the said Peach Wall, being the same person who was on the jury in the trial of said case in circuit court of Miller county, Missouri, expressed his opinion in said cause as to what should be did at the trial thereof by saying in referring to Howell Mace, the defendant, that 'a fellow like that' (mean-

ing Howell Mace, the defendant) 'ought to be sent to the penitentiary.' ''

Counter-affidavits were filed by the State; one by Wall, the juror whose competency was attacked, in fair effect denying the truth of Mrs. Thomas's affidavit, and one by the prosecuting attorney Stillwell, touching the facts which transpired upon the *voir dire* examination of said Wall. The affidavit of Wall, caption, signature and jurat omitted, is as follows:

''Peach Wall, of lawful age, being first duly sworn, says that he remembers being present in the store of James Wall at Faith, Miller county, Mo., within a very short time after the shooting of Mr. and Mrs. Herod Williams by Howell Mace, at which time there were a number of men present; that words had just been received by them over the telephone that Mrs. Herod Williams was either dead or dying and that Mr. Williams was fatally injured as a result of the shooting, but that the report at that time was that John Mace did the shooting; that affiant left the county about that time and it was several days afterwards before he found out that Howell Mace did the shooting; that there were some expressions made by those present to the effect that a person who was guilty of an act of that kind should be in the penitentiary, but this affiant states that he has no recollection whatever of having made such an expression or statement himself, but that if he did make such an expression it was based on the report which had just been received as aforesaid.

''Affiant says that he remembers there were several persons present at said time and place and engaging in the conversation regarding said shooting, and that some expressions were made as above, but affiant states the fact to be that at no time and place prior to the trial of the case of the State of Missouri v. Howell Mace in the circuit court of said county did he make the expression or statement that the defend-

ant was guilty of the crime charged and that if he made any expression at all at the time and place aforesaid it was to the effect that if a person was guilty of such an act he should be in the penitentiary.

"And further affiant saith not."

The affidavit of Stillwell, the prosecuting attorney, in substance states that upon the *voir dire* examination of said Wall the latter stated upon his oath in the presence of defendant and of the latter's counsel, that he (Wall) had had a conversation with the brother-in-law of the prosecuting witness but that he (the juror) had not formed or expressed any opinion as to defendant's guilt or innocence; that the juror was thereupon examined touching the condition of his mind as to bias and prejudice and as to the opinion, if any, which the juror had expressed in the conversation aforesaid. He denied having either bias or prejudice, or having any opinion as to defendant's guilt or innocence. These three affidavits for and against the alleged bias of the juror Wall comprised all of the proof offered upon this phase. The learned trial court held that no sufficient prejudice or bias was shown, and overruled this assignment of error.

The three points mentioned, that is to say, the alleged insufficiency of the information and the alleged incompetence of the jurors Wall and Lumpkin are the only points made by the defendant. To the discussion of these the appended opinion is directed.

## OPINION.

I.   The first point urged by defendant's learned counsel as a reason for reversal is that the information is bad.   We have set it out in full in the statement, except the caption and verification, which are in proper form.   Defendant's only specific attack upon this information is that it does not charge that the assault

Information:
Felonious
Intent.

upon the prosecuting witness Williams was made with a felonious intent. Even a casual examination of this information discloses that defendant is in error as to this. After alleging that the assault was made feloniously; that the shooting and striking were done feloniously, the information concludes by charging that the assault and shooting were done *"with the intent then and there, him the said Herod Williams on purpose and of his malice aforethought, feloniously to kill and murder."* This is sufficient and the information is a good charge for an assault with intent to kill perpetrated by means of a firearm (Kelley's Crim. Law & Prac. 576; State v. Bond, 191 Mo. 555; State v. Doyle, 107 Mo. 36), the dangerous and deadly nature of which we know and judicially notice. The distinction to be observed in drawing an information under said section 4481, when the lethal weapon is a rock, club or some other weapon, the dangerous and deadly nature of which courts do not judicially notice, is obvious and is fairly well disclosed by the very language of the section in question. We are forced to disallow this contention.

II. The next contention is that the juror Lumpkin was incompetent. This juror's name does not appear on the trial panel of twelve, so he must have been on the original *venire* of twenty-four and have been challenged off by either the State or the defendant. We pretermit the discussion of how far this fact of itself might minimize the alleged error, since upon this record we need express no opinion on the above suggested phase.

Juror: Competency.

The record discloses that this juror did not personally know the defendant; that he was in some doubt as to whether he knew Williams; that he had read some newspaper accounts of this assault, from which sole source he had formed an opinion as to the guilt

or innocence of defendant, which opinion he still had and which was of such character as to require some sworn testimony for its removal. He said, however, that he would be governed by the sworn testimony. Thereupon counsel for defendant objected to the retention of this juror thus: *"The defendant's counsel objects to the juror, challenges him for cause."*

Thereafter, counsel for the State undertook to compel a qualification of the juror and at the end got him to say that "he thought he was capable of laying aside and would lay aside the opinion which he now had and be governed by the sworn testimony alone."

We need not take the time to consider whether the juror was competent or not, since as clearly appears no proper objection, or rather no proper challenge for cause, was made to his competency. A challenge for cause must be specific and point out the ground or reason for the challenge. It is no more sufficient to object simply, or to say that the juror is challenged for cause, which is but a legal conclusion, than it is to object to the offer of inadmissible evidence, for that it is not competent. [State v. Fields, 234 Mo. 615; State v. Bobbitt, 215 Mo. 10; State v. Tucker, 232 Mo. 1; State v. Miles, 199 Mo. 530; State v. Myers, 198 Mo. 225; State v. McCarver, 194 Mo. 717; State v. Evans, 161 Mo. 95; State v. Soper, 148 Mo. 217; State v. Albright, 144 Mo. 638; State v. Dyer, 139 Mo. 199; State v. Reed, 137 Mo. 125; State v. Taylor, 134 Mo. 109.] It follows that this point is not well taken.

In passing we take the opportunity to say that the small trouble of telling an incompetent juror to stand aside and of calling, ordinarily from the by-standers, a competent one to take his place, ought so lightly to weigh against the hazard to the case of refusing to take this step, and against the ofttimes outrageous unfairness to a defendant on trial, mayhap for his life, that ordinarily neither the court *nisi* nor the State's counsel, out of the abundance of caution and impar-

tiality, should ever take so momentous a chance. But for most unaccountable reasons, we have long observed that in a great majority of cases the moment the defense undertakes to disqualify a juror the State (aided more often than necessary by the trial court) rushes to the juror's relief as if the particular juror were Atlas and the world rested on him. It is no reflection on the trial court or on the State's attorney to have counsel for defendant disqualify a proposed juror; it is more often a reflection on both judge and counsel when they refuse to permit it. With the world absolutely filled with competent, unbiased and unprejudiced jurors, error in this behalf is usually gratuitous and unnecessary, a few notorious *causes celebres* excepted.

III.   Complaint is likewise made that one Wall, who was on the trial panel of twelve, was **Juror: Prejudice.** a prejudiced and incompetent juror and one who had before the trial both formed and expressed an opinion of defendant's guilt.

We set out the affidavits bearing pro and con upon this juror's alleged incompetence. A reference to the statement of facts as we set them out, shows that the affidavit of Mrs. Janie Thomas was filed in support of the allegation of Wall's bias, in which affidavit it was charged that "said Peach Wall being the same person who was on the jury in the trial of said case, expressed his opinion in said cause as to what should be did [*sic*] at the trial thereof by saying in reference to Howell Mace, the defendant, that 'a fellow like that' (meaning Howell Mace, the defendant) 'ought to be sent to the penitentiary.'" In opposition to the charge contained in the affidavit of Mrs. Thomas, the affidavit of said juror Wall was filed, which affidavit we likewise set out. Reference to it discloses that in fair substance Wall says that while at the place mentioned by Mrs. Thomas in her affidavit, he heard from

a conversation over the telephone that John Mace had shot both Mr. and Mrs. Herod Williams; that the former was dying and the latter fatally wounded; that affiant (the juror Wall) shortly after this left the country temporarily and did not for a number of days thereafter learn that defendant Howell Mace did the shooting; that other persons present expressed the opinion that a person who was guilty of an act such as was detailed over the telephone ought to be in the penitentiary, but that affiant has no recollection of having made any such remark himself, but if he did so, it was based on the telephone report aforesaid; that at no time or place prior to the trial of defendant did affiant make the statement that defendant was guilty of the crime charged, but that whatever he may have said was to the effect that if a person was guilty of such an act he should be in the penitentiary. It further appears that upon his *voir dire* this juror swore he had formed no opinion. Upon this state of the proof touching bias the learned trial court ruled against the defendant and overruled the assignment of alleged error based upon the juror's alleged incompetence. Was this error?

It appears in a reasonably clear way when we analyze fairly what the juror Wall swears he said, that his bias and the views he expressed were not against the defendant at all, but that he entertained strong prejudice against the crime committed, by whomsoever committed, the report whereof had come to him without details over the telephone. His animosities were impersonal, directed toward that which telephone rumor characterized as a most heinous offense, and not toward defendant himself at all. In fact he did not learn that defendant did the shooting till some days after the alleged statements are said to have been made. In such state of things what was said in State v. Sykes, 191 Mo. l. c. 76, is appropriate:

"It is true some of them said they were preju-
diced against this kind of case or crime, but not against
a man charged with such crime before being proven
guilty. It was held in State v. Bryant, 93 Mo. 273, and
in State v. Williamson, 106 Mo. 162, that persons who
have formed opinions of the guilt of an accused upon
trial for crime, from rumor or newspaper reports, are
not for that reason rendered incompetent to sit as
jurors on the trial of the case, where they answer upon
their *voir dire* that they can give the defendant a fair
and impartial trial. [State v. Duffy, 124 Mo. 1.]  A
juror who states on his *voir dire* examination that he
has formed and expressed an opinion as to the guilt or
innocence of the accused and that the opinion has been
formed from rumor or newspaper reports, and it will
require evidence to remove it, is not incompetent, pro-
vided it appears to the satisfaction of the court that
such opinion will readily yield to the evidence in the
case and that the juror will determine the issues upon
the evidence adduced in court, free from bias.  It is
said in State v. Cunningham, 100 Mo. 382, that all
doubts should be resolved in favor of the finding of
the trial court, and the question of the qualification
of the juror must be determined from his whole ex-
amination, including his demeanor while answering
questions under oath touching his qualifications as a
juror."

We abate not one jot or tittle from the rule laid
down in State v. Gonce, 87 Mo. l. c. 630, that "it is set-
tled law in this State that it is a good ground for a
new trial when a juror on his *voir dire* examination
has stated that he has neither formed nor expressed
an opinion as to the guilt or innocence of the accused,
and after verdict it comes to the knowledge of the ac-
cused that such juror had prejudged the case, and that
fact is made to appear to the satisfaction of the court.
In such cases the question as to whether the juror had
prejudged the case is one of fact to be determined by

the trial judge, as any other question of fact on sworn statements.'' We are nevertheless of the opinion, the source of the rumor considered, the doubt whether the remark was made at all or not, and the doubt of its applicability to defendant, or to a general but commendable detestation of heinous crimes, that we ought to defer to the finding of the learned trial court. [Morgan v. Ross, 74 Mo. 318; State v. Cook, 84 Mo. 40; State v. Gonce, supra.]      This we do and disallow this contention.

Finding no other error properly preserved, we are of opinion that the case should be affirmed. Let this be done.  *Walker, P. J.,*  and  *Brown, J.,*  concur.