STATE of Missouri, Respondent,

v.

Patricia DIXON, Appellant.

No. 67857.

Supreme Court of Missouri,
En Banc.

Oct. 14, 1986.

David Durbin, Sean O'Brien, Kansas City, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Judge.

The defendant was convicted of second degree murder and sentenced to life imprisonment. The Court of Appeals reversed and remanded by 2–1 vote, concluding that the defendant should have been allowed to question prospective jurors on voir dire as to whether they could fairly consider the lesser included offense of manslaughter. We granted transfer and now affirm, concluding that the defendant was not prevented from asking any proper question on voir dire and that the other alleged trial errors are not meritorious.

The victim had given money to the defendant, a prostitute, as consideration for services to be rendered. For reasons unexplained he then asked for his money back. There was evidence of an altercation between the victim and the defendant, after which she proceeded to stab him 11 times. The jury was instructed on second degree murder, manslaughter, and self-defense.

The prosecutor on voir dire asked whether any prospective juror would be unable to consider a sentence within the range of 10 years to life, as authorized by §§ 558.011 and 565.021, RSMo Supp.1984 for murder in the second degree. Defense counsel, when it was his turn to question, undertook

inquiry about manslaughter. Proceedings as follows ensued:

The State told you that the range of punishment for murder in the second degree is ten years minimum to life maximum. The State did not tell you that they also have to give a manslaughter instruction in this case, that that carries a penalty of one day—that carries a penalty of six months to ten years in the Missouri Department of Corrections.

The instructions tell you that if you find Patricia Dixon—

MS. STARKE: I am going to have to object. May we approach the bench?

(Whereupon, counsel approached the bench and the following proceedings were had:)

MS. STARKE: I am going to object to his instructing the jury as to any of the instructions, particularly murder and manslaughter and going into the elements.

THE COURT: Sustained.

(Whereupon, the proceedings returned to open court.)

MR. WHEELER: The instructions tell you that if you find beyond a reasonable doubt—

THE COURT: Mr. Wheeler, I have ruled upon that objection. I wish you would move to the next question.

MR. WHEELER: May we approach the bench.

(Whereupon, counsel approached the bench and the following proceedings were had:)

MR. WHEELER: I was going to ask the question about murder in the second degree. I can ask the question about manslaughter—

THE COURT: Mr. Wheeler, I have ruled it. If you want to make an offer of proof, make it.

MR. WHEELER: I will make and my offer of proof is, the State is questioning the jury concerning murder in the second degree. It is automatic, you have to give instruction of manslaughter in murder in the second degree. I can ask the jury if they find the defendant guilty beyond a

reasonable doubt will they follow the instructions and consider murder in the second degree as well as manslaughter in this, and this goes to the fact that whether or not the jury is going to follow the instructions in this case and be given it by the Court. I feel the State can ask the question, I can ask the question, also. I don't have anymore questions and I can't have a fair trial because I can't ask that question.

■ The defendant argues that she is entitled to inquire as to whether the jury can follow the court's instructions on issues which are necessarily present in the case. We agree. *See State v. Brown*, 547 S.W.2d 797, 798–800 (Mo.banc 1977), finding reversible error because counsel was not permitted to ask about jurors' attitudes toward self-defense instructions. (Defense counsel in this case made such an inquiry.) *See also State v. Mosier*, 102 S.W.2d 620, 624 (Mo.1937).

■ Defendant's counsel, however, did not ask any question about whether the jurors could consider a manslaughter verdict. Objections were sustained only to his attempts to read a manslaughter instruction to the jury. The court's ruling is supported by *State v. Smith*, 422 S.W.2d 50, 68 (Mo.banc 1967) *cert. denied*, 393 U.S. 895, 89 S.Ct. 150, 21 L.Ed.2d 276 (1968), and by *State v. Beatty*, 617 S.W.2d 87, 92 (Mo.App.1981). The "offer of proof" tendered at the court's invitation was simply an argument. Counsel did not attempt to frame a question in terms of the juror's willingness to consider a manslaughter verdict under the court's instructions. The court had no obligation to frame a question for him.

A detached observer might think that there would have been no great harm to the state's case if the prosecutor had withheld her objection, and that, if there had been no objection, the lengthy ensuing proceedings might have been avoided. But the trial court's rulings were in accord with existing case law, and there is no indication of prejudice because of the absence of a

question about manslaughter. The defendant did not admit presence at the scene and her counsel certainly did not suggest a manslaughter verdict. The jury was instructed to consider a manslaughter verdict only if it found the defendant not guilty of second degree murder, and it never reached that point. Under these circumstances it is entirely appropriate to require strict compliance with the technical requirements for preserving claim of error.

 The defendant also complains about the admission of photographs showing the wounds on the victim's body, asserting that the prejudicial effect outweighed the probative value. The particular complaint is that the inflammatory effect of the photographs is enhanced because they show tubes and incisions used in the attempt to save the victim's life, after he was taken to the hospital. The ruling on such a contention is almost always a matter for the discretion of the trial court. *State v. Davis*, 653 S.W.2d 167, 175 (Mo.banc 1983), and cases cited. In ruling the issues presented by the instructions, the number and location of the wounds was very important. The prosecutor initially offered seven photographs in evidence. At the trial judge's suggestion, the medical witness on the stand selected four of these which she considered helpful in explaining her testimony. The objection was overruled as to these but sustained as to the rest. The record, far from showing abuse of discretion, demonstrates solicitude for the defendant's rights, and admission of photographs only to the extent necessary. The procedure followed is commendable. On examining the photographs we find them hardly more inflammatory than the testimony.

The defendant's final point relates to two items of argument. When defense counsel pointed out that one witness had received immunity, the trial prosecutor replied by saying "If you don't like the deal, talk to [the prosecuting attorney], send him a letter." Later, the prosecutor argued, "[defendant] was after the money and I tell you, I think you can see from the evidence that she enjoyed what she was doing, en-

joyed it to the tune of 11 times." Objections were sustained to each of these comments, and the jury was instructed to disregard them. The trial judge did not consider that the drastic step of mistrial was required. We see no reason to reverse his ruling.

The judgment is affirmed.

HIGGINS, C.J., BILLINGS, DONNELLY, WELLIVER and RENDLEN, JJ., and CRIST, Special Judge, concur.

ROBERTSON, J., not sitting.