Betty J. RUPARD, et al, Appellants,

v.

George PRICA, Jr., M.D.,
et al., Respondents.

No. WD 75687.

Missouri Court of Appeals,
Western District.

Aug. 13, 2013.

Application for Transfer to Supreme
Court Denied Oct. 1, 2013.

Application for Transfer Denied
Nov. 26, 2013.

Aaron Smith, Columbia, MO, for Appellant.

John Roark, Phebe LaMar, Columbia, MO, for Respondent.

Before Division Two: THOMAS H. NEWTON, P.J., KAREN KING MITCHELL, and GARY D. WITT, JJ.

THOMAS H. NEWTON, Presiding Judge.

Ms. Betty J. Rupard and her minor child (the Rupards) appeal the trial court's judgment in favor of Dr. George Prica, Jr., M.D., and Columbia Family Medical Group (Defendants) on the Rupards' claim for medical negligence following the death of Mr. John Rupard—Ms. Rupard's husband and the minor child's father. The Rupards contend the trial court erred in allowing Juror 40 to participate as a juror in the case.[1] We affirm.

---

1. The Rupards initially raised three points on appeal. However, they voluntarily aban-

## Factual and Procedural Background

■ The Rupards filed a petition against Defendants alleging medical negligence based on a failure to diagnose medical conditions that led to Mr. Rupard's death. A jury trial was held. During voir dire, several jurors were stricken for cause. At the end of voir dire, the trial court struck additional jurors for cause. The Rupards moved to strike particular venirepersons, but did not move to strike Juror 40.[2] Eighteen venirepersons remained and six the trial court designated as prospective alternates. Both parties made preemptive strikes. The Rupards did not exercise a peremptory challenge against Juror 40. After preemptive strikes were made, both parties stated they had no objections to the panel. The jury was sworn. However, prior to opening arguments, the Rupards moved to strike Juror 40 and replace her with an alternate; the trial court denied the motion.

Evidence was presented over the course of four days. On the final day, the jury deliberated from 2:45 p.m. until 10:25 p.m. The jury found in Defendants' favor by a vote often to two and judgment was entered in accord with the jury verdict. Juror 40 was one of the ten jurors finding in Defendants' favor.

The Rupards filed a post-trial motion contending, *inter alia*, that the trial court erred in "allowing [Juror 40] to deliberate in this medical malpractice action after disclosing her bias during voir dire." After argument, the trial court denied the Rupards' motion. The Rupards appeal.

## Standard of Review

■ A trial court's decision whether to replace a regular juror with an alternate during trial is a matter of its discretion. *Khoury v. ConAgra Foods, Inc.*, 368 S.W.3d 189, 198–99 (Mo.App. W.D.2012); *see also* § 494.470[3] ("If the cause of challenge be discovered after the juror is sworn and before any part of the evidence is delivered, the juror may be discharged or not in the discretion of the court."). An abuse of discretion occurs where the trial court's ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 195.

## Legal Analysis

In the sole point on appeal, the Rupards argue that the trial court erred by failing to strike Juror 40 for cause based on information the Rupards presented from Juror 40's alleged Facebook[4] page and "Accurint"[5] report. They contend the docu-

doned their first two points prior to oral argument.

2. In one of the two abandoned points on appeal, the Rupards claimed they requested that the trial court strike Juror 40 during voir dire. This claim is not supported by the record. Rather, the record shows the Rupards objecting to limitations the trial court imposed on questioning of Juror 40 as to malpractice insurance, followed by a vague statement by counsel of "Then take her off. Let's get rid of her right now." The law is clear that a "challenge for cause must be specific and point out the ground or reason for the challenge," in the same manner as an objec-

tion to inadmissible evidence must be specific and clear. *See State v. Mace*, 262 Mo. 143, 170 S.W. 1105, 1108 (1914).

3. Statutory references are to RSMo 2000 unless otherwise indicated. Rule references are to the Missouri Rules of Civil Procedure 2012.

4. "*Facebook* is a popular Internet social networking website operated by Facebook, Inc." *Khoury v. ConAgra Foods, Inc.*, 368 S.W.3d 189, 200 n. 9 (Mo.App. W.D.2012).

5. Plaintiffs' counsel stated that "Accurint" is a Westlaw product that "does some research into background" and "tracks people's Social

ments suggested intentional nondisclosure during voir dire and required the trial court to strike Juror 40.

The jury was sworn at the close of voir dire on a Friday. The following Monday, prior to trial, the Rupards moved to strike Juror 40. The trial court held a hearing and counsel for the Rupards explained that as part of a routine, they performed internet research on the members of the jury panel over the weekend. They explained that on her Facebook page, Juror 40 commented that her favorite Fabulous Bentley Brothers song is "Judges," which they contended is a song making a mockery of the judicial system. The song was played for the trial court, but it was not transcribed, offered as proof, or provided to this court on appeal. The Accurint report they argued showed that Juror 40 had lived in four other cities during the prior five years, but in voir dire, Juror had stated she had lived in Columbia, Missouri, for the prior eighteen years. Defendants disputed that the Accurint reported showed Juror 40 had lived in different cities, and counsel for the Rupards admitted it was probable that the addresses reflected places she had been on missions for her church. Defendants further argued that the Rupards were seeking to gain another preemptive strike.

The trial court noted that the internet information could have been found prior to the jury being sworn. It further stated that it had no basis for relying on the documents: "How do I know it is accurate? How do I know that that is correct and her comments or statements on her questionnaire are incorrect? ... It is hearsay evidence. I have no foundation. I've got nothing."

When one of the Rupard's attorneys suggested they could question Juror 40

Security numbers on where they register for

about the alleged nondisclosure, co-counsel told the court they refused to do so.

[PLAINTIFFS' COUNSEL]: We can ask the juror if she in fact lived in places.

[PLAINTIFFS' CO-COUNSEL]: No. We are not going to talk to her. Because if you don't strike her, then she is going to go back there and say we were picking on her.

The trial court ruled that the motion was not timely, and it further found that the Rupards had not presented anything showing that Juror 40 could not be fair and impartial. "[F]rom my standpoint," the court explained, "I don't have sufficient evidence that would justify me taking her off the jury at this time." The Rupards requested to mark the materials as an offer of proof but made no further request of the trial court. The Rupards then marked the pages of the materials as exhibits not being received into evidence.

On appeal, Defendants assert that the Rupards did not raise this claim in their motion for new trial, that there was not cause to strike Juror 40—even if the trial court had admitted the documents—and that the Rupards chose not to question Juror 40. The Rupards respond that it was the trial court's "incumbent duty" to question Juror 40 or replace her with an alternate.

As to the issue of whether the claim was preserved, the Rupards' motion for new trial claimed error "in allowing juror [40] to deliberate in this medical malpractice action after disclosing her bias during voir dire." In their later filed suggestions in support, the Rupards argued that the trial court erred in failing to strike Juror 40 because the materials they offered showed a probability of bias. Assuming *arguendo* that this was sufficient to present the

utilities."

claim the Rupards raise here, we find no reversible error.

■ We agree with the Rupards that the trial court improperly found the Rupards' motion untimely, despite the panel having been sworn. In *Khoury*, we specifically addressed this issue. 368 S.W.3d at 202. ConAgra moved to substitute a juror based on information on the juror's Facebook page and on a personal blog, which counsel alleged showed a bias that was not disclosed in response to a specific voir dire question. *Id.* at 193, 200. As in the instant case, the motion was made after the jury had been sworn, but before opening statements. *Id.* The trial court questioned the juror about the bias allegedly exposed by the material and subsequently granted the motion to remove the juror. *Id.* We found that the court had acted out of an abundance of caution, and there was no abuse of discretion. *Id.* at 201–02. As to the timing of the motion, we found that neither case law nor Supreme Court rules on juror nondisclosure "require that *any and all* research—Internet based or otherwise—into a juror's alleged material nondisclosure must be performed and brought to the attention of the trial court *before* the jury is empanelled or the complaining party waives the right to seek relief from the trial court." *Id.* at 202–03.[6]

However, in *Khoury*, we in no way suggested that the trial court was *required* to discharge the juror, nor did we suggest that "jurors are 'fair game' for continuous Internet 'screening' during the course of a trial." *Id.* at 201 n. 11. Rather, we stated that "when as here, there is evidence fairly suggesting intentional nondisclosure to a voir dire question, litigants *have a right to* bring such alleged nondisclosure to the trial court's attention." *Id.* (emphasis added). We specifically reaffirmed that it was the trial court's role to assess the juror's ability to discharge his or her duties. *Id.* at 201.

■ Here, although the trial court found the motion untimely, the Rupards were not denied their right to bring the matter to the trial court's attention. The record reflects that the trial court considered their motion, that it reviewed their materials without admitting them into evidence, that arguments were made, and that the trial court found the claim unsubstantiated as well as untimely. We see no abuse of discretion in its denial of their claim. While the Rupards contend the trial court erred in refusing to strike Juror 40 based on their offered materials, they failed to provide these materials for our review. "Exhibits offered into evidence but excluded by the trial court are properly part of the record on appeal." *In re B.M.O.*, 310 S.W.3d 281, 289 (Mo.App. S.D. 2010). Where the appellant fails in its duty to support his claim of error from the record, we will assume the matters omitted supported the trial court's decision. *In re D.D.C*, 351 S.W.3d 722, 736 (Mo.App. W.D. 2011). Further, if there is no evidence in the record to establish the appellant's claim, we do not find trial court error. *Id.* Nothing in the record other than argument supports the Rupards' claim.

■ The Rupards further argue that the trial court erred because it should have *sua sponte* decided to subject Juror 40 to its own independent examination after their motion. On these facts, we do not agree. The arguments against Juror 40

---

**6.** We distinguished *Johnson v. McCullough*, 306 S.W.3d 551 (Mo. banc 2010), which directed that parties should use reasonable efforts to investigate jurors prior to trial in order to preserve a juror nondisclosure claim in that *Johnson* dealt only with a duty to research a juror's litigation history prior to trial, and that Johnson has since been replaced by Missouri Supreme Court Rule 69.025. *Khoury*, 368 S.W.3d at 202.

were tenuous at best and to accomplish affirmative action by the trial court it is "incumbent upon the plaintiffs to make known what action they desire[ ] the court to take." *Pollard v. Whitener*, 965 S.W.2d 281, 289 (Mo.App. W.D.1998); *see also State v. Dixon*, 717 S.W.2d 847, 848 (Mo. banc 1986) (stating the trial court had no obligation to frame voir dire questions for counsel). Here, the Rupards concede that they did not request to question Juror 40 and that they did not request that the trial court question Juror 40. We believe the duty falls on the proponent of removal to conduct examination or to request trial court examination—particularly where voir dire has been completed, preemptive strikes have been made, and the panel has been sworn. At minimum counsel could have preserved the argument by requesting trial court examination or made an offer of proof of questions it desired the trial court to ask. *See Dixon*, 717 S.W.2d at 848. Here, counsel did not offer proof as to the foundation of the materials it wished to use to support its claim, did not question the juror, did not request the trial court question the juror, and did not offer proof as to an examination the trial court should have conducted. To now assert on appeal that reversal is required because the trial court erred in its "incumbent duty" by not questioning the juror itself asks us to set a precedent condoning sandbagging, which we will not do. The Rupards' sole point is denied.

### Conclusion

Therefore, we affirm the trial court's judgment.

MITCHELL and WITT, JJ. concur.

